In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-20-00075-CR**

**THE STATE OF TEXAS, Appellant**

**V.**

**DAN M. GROHN, Appellee**

**On Appeal from the County Court at Law No. 1**
**Montgomery County, Texas**
**Trial Cause No. 19-340752**

## OPINION

In an accelerated appeal, the State challenges a trial court's ruling holding Texas Penal Code Section 42.07(a)(7) is facially unconstitutional. *See* Tex. Penal Code Ann. § 42.07(a)(7). For the reasons explained below, we reverse and remand.

### I. Background

On April 30, 2019, the State charged Dan M. Grohn by information with the following crime:

[O]n or about beginning February 1, 2019 and continuing . . . through on or about March 18, 2019 . . . DAN GROHN . . . did then and there, with intent to harass, annoy, alarm, abuse, torment and embarrass [J.D.], make repeated electronic communication to [J.D.], in a manner reasonably likely to harass the said [J.D], to wit: emailing and or texting her numerous times with vague and rambling messages despite being asked not to send her such communications[.][1]

In response to the State's charges against him, Grohn filed a Motion to Quash and Exception to Substance of Information, arguing that Texas Penal Code 42.07(a)(7) is facially unconstitutional as vague and overbroad. *See id.* After a hearing, the trial court granted Grohn's motion, the State timely appealed.

## II. Standard of Review

Ordinarily, when reviewing the constitutionality of a statute, we presume that the statute is valid and that the legislature has not acted unreasonably or arbitrarily. *Ex parte Lo*, 424 S.W.3d 10, 14–15 (Tex. Crim. App. 2013); *Maloney v. State*, 294 S.W.3d 613, 626 (Tex. Crim. App. 2009) (citing *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002)). The party challenging the statute normally carries the burden to establish the statute's unconstitutionality. *Rodriguez*, 93 S.W.3d at 69. We shall uphold the statute if there is a reasonable construction that renders it constitutional. *Maloney*, 294 S.W.3d at 626 (citing *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. [Panel Op.] 1979)). "Whether a statute is facially

---

[1] We refer to the victim by her initials to conceal her identity. *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

2

constitutional is a question of law that we review *de novo*." *Ex parte Lo*, 424 S.W.3d at 14 (citations omitted).

### III. Analysis

The State argues three issues on appeal contending that section 42.07(a)(7) is constitutional. First, the State argues that section 42.07(a)(7) is not overbroad; second, the statute is not vague; and third, if this Court finds section 42.07(a)(7) unconstitutional, any unconstitutional phrase can be "excised" from the information. In response to the State's brief, Grohn argues that Section 42.07(a)(7) is facially unconstitutional and requests that we affirm the trial court's judgment.

Section 42.07(a)(7) contains the following language regarding harassment and repetitive electronic communication:

> A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person . . . sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.

Tex. Penal Code Ann. § 42.07(a)(7).

Before a statute will be invalidated on its face as overbroad, the overbreadth must be real and substantial when "'judged in relation to the statute's plainly legitimate sweep.'" *Ex parte Lo*, 424 S.W.3d at 18 (quoting *Virginia v. Hicks*, 539 U.S. 113, 118–19 (2003)). A statute should not be invalidated for overbreadth merely because it is possible to imagine some unconstitutional application. *See In re Shaw*, 204 S.W.3d 9, 15 (Tex. App.–Texarkana 2006, pet. ref'd). With respect to

3

vagueness, statutes are not necessarily unconstitutionally vague merely because the words or terms employed in the statute are not specifically defined. *See Engelking v. State*, 750 S.W.2d 213, 215 (Tex. Crim. App. 1988). When a statute does not define the words used therein, we will give the words their plain meaning. *See Parker v. State*, 985 S.W.2d 460, 464 (Tex. Crim. App. 1999); *see also* Tex. Gov't Code Ann. § 311.011(a) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). A statute will be invalidated if it fails to give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited. *See State v. Holcombe*, 187 S.W.3d 496, 499 (Tex. Crim. App. 2006).

The Court of Criminal Appeals addressed a similar argument in *Scott v. State* when it analyzed the constitutionality of section 42.07(a)(4) regarding harassment and telephonic communication. *See* 322 S.W.3d 662, 664 (Tex. Crim. App. 2010); *see also* Tex. Penal Code Ann. § 42.07(a)(4). The Court of Criminal Appeals explained in *Scott* that to determine if section 42.07(a)(4) implicates constitutionally protected speech we must "determine the protection afforded by the free-speech guarantee, and then we must determine the meaning of § 42.07(a)(4)." *Scott*, 322 S.W.3d at 668. In analyzing if the statute as written implicated the First Amendment's free-speech guarantee, the Court explained that

> [t]he First Amendment provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech." This guarantee of

4

free speech, which was made applicable to the various states by the Due Process Clause of the Fourteenth Amendment, generally protects the free communication and receipt of ideas, opinions, and information[.] In a nation of ordered liberty, however, the guarantee of free speech cannot be absolute. The State may lawfully proscribe communicative conduct (i.e., the communication of ideas, opinions, and information) that invades the substantial privacy interests of another in an essentially intolerable manner.

*Id*. at 668–69 (citations omitted). The Court then broke down section 42.07(a)(4) into parts and analyzed each section. *Id*. Upon completion of its review, *Scott* explained that considering the "plain text, we believe that the conduct to which the statutory subsection is susceptible of application will be, in the usual case, essentially noncommunicative, even if the conduct includes spoken words." *Id.* at 670 (citation omitted). The Court reasoned that the "persons whose conduct violates § 42.07(a)(4) will not have an intent to engage in the legitimate communication of ideas, opinions, or information; they will have only the intent to inflict emotional distress for its own sake." *Id*. In other words, because the statute required the actor have the specific intent to "annoy, alarm, abuse, torment, or embarrass another, he . . . makes repeated telephone communications . . . in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another[,]" this was not communication protected by the First Amendment. *Id.* at 669–670; *see also* Tex. Penal Code Ann. § 42.07(a)(4).

Several of our sister courts have applied *Scott's* analysis to section 42.07(a)(7) and affirmed the statute's constitutionality. *See Ex parte McDonald*, 606 S.W.3d

5

856, 859–862 (Tex. App.—Austin 2020, no pet.); *Lebo v. State*, 474 S.W.3d 402, 408 (Tex. App.—San Antonio 2015, pet. ref'd); *Tarkington v. State*, No. 12-19-00078-CR, 2020 WL 1283899, at *3 (Tex. App.—Tyler Mar. 18, 2020, no pet.) (mem. op., not designated for publication); *Ex parte Sanders*, No. 07-18-00335-CR, 2019 WL 1576076, at *4 (Tex. App.—Amarillo Apr. 8, 2019, pet. granted) (mem. op., not designated for publication); *Ex parte Hinojos*, No. 08-17-00077-CR, 2018 WL 6629678, at *5–6 (Tex. App.—El Paso Dec. 19, 2018, pet. ref'd); *Ex parte Reece*, No. 11-16-00196-CR, 2016 WL 6998930, at *3 (Tex. App.—Eastland Nov. 30, 2016, pet. ref'd) (mem. op., not designated for publication); *Blanchard v. State*, No. 03-16-00014-CR, 2016 WL 3144142, at *3–4 (Tex. App.—Austin June 2, 2016, pet. ref'd) (mem. op., not designated for publication); *Duran v. State*, Nos. 13-11-002505-CR, 13-11-00218-CR, 2012 WL 3612507, at *2–4 (Tex. App.—Corpus Christi—Edinburgh Aug. 23, 2012, pet. ref'd) (mem. op., not designated for publication).

In a published opinion, the San Antonio Court of Appeals held that section 42.07(a)(7) is constitutional. *See Lebo*, 474 S.W.3d at 408. The Appellant in *Lebo* was charged with harassment through repeated electronic communications, specifically sending repetitive "threatening and combative" emails to a police detective. *Id*. at 404. *Lebo* stated that *Scott's* analysis was "equally applicable" to section 42.07(a)(7) and any difference in text is "inconsequential to the First

6

Amendment analysis." *Id*. at 407. The court noted that as with *Scott* and telephone harassment,

> repeated emails made with the specific intent to inflict one of the designated types of emotional distress "for its own sake" invade the substantial privacy interests of the victim in "an essentially intolerable manner;" thus, they are not the type of legitimate communication that is protected by the First Amendment.

*Id*. at 408 (quoting *Scott*, 322 S.W.3d at 670).

In *Reece,* the Eastland Court of appeals analyzed *Scott* in relation to 42.07(a)(7). *See* 2016 WL 6998930, at *3. That Court determined the *Scott* analysis of conduct under section 42.07(a)(4) was analogous to section 42.07(a)(7)'s criminalized activity, ultimately concluding that 42.07(a)(7) was constitutional. *See id*.

Similarly, in *McDonald*, the Austin Court of Appeals explained that the reasoning and holding in *Scott* applied to section 42.07(a)(7). *See* 606 S.W.3d at 860 (citing *Blanchard,* 2016 WL 3144142, at *3).

> "[T]he free-speech analysis in *Scott* is equally applicable to subsection 42.07(a)(7)." Although this Court noted that the language in subsections 42.07(a)(4) and 42.07(a)(7) differs slightly in that subsection 42.07(a)(4) "provides an alternative manner of committing the offense by making repeated phone calls 'anonymously,'" this Court reasoned that the slight "textual difference is inconsequential to the First Amendment analysis" and noted that the remaining statutory language in the two subsections "is identical."

*Id.* (citations omitted). The *McDonald* court hinged its analysis on the fact that *Scott* identified violations that required the actor to "'engage in the particular form of

communicative conduct with the specific intent to' harm the victim by inflicting one of the types of emotional distress listed in the statute." *Id*. (quoting *Blanchard*, 2016 WL 3144142, at \*3. Because of that, *McDonald* reasoned that

> "an actor who violates subsection 42.07(a)(7) has no more an intent to engage in legitimate communication of ideas, opinions, or information than an actor whose telephone calls violate subsection 42.07(a)(4)" and that "[r]epeated electronic communications made with the specific intent to inflict one of the designated types of emotional distress 'for its own sake' invade the substantial privacy interests of the victim in 'an essentially intolerable manner.'"

*Id.* (citations omitted). This is not speech protected by the First Amendment nor does it implicate speech protected by the First Amendment. *Id*.

In *Tarkington*, the Tyler Court of Appeals extended *Scott* to section 42.07(a)(7), holding that "[b]ecause Section 42.07(a)(7) is susceptible of application only to communicative conduct that invades the substantial privacy interests of another in an essentially intolerable manner, we conclude that it does not implicate the First Amendment's free speech guarantee." 2020 WL 1283899, at \*3. The Court explained that the appellant failed to demonstrate that section 42.07(a)(7) is facially overbroad or vague. *Id*.

## A. Overbroad

The State argues in its first issue that section 42.07(a)(7) is not unconstitutionally overbroad. In response, Grohn contends that the statute is facially invalid, arguing that as the statue is currently constructed, it is impossible to

8

determine which type of speech the legislature intended to restrict. Specifically, he states that the terms "harass, annoy, alarm, abuse, torment, embarrass, or offend" are facially unconstitutional because the terms are overbroad and the statute "sweeps too far and prohibits expression that should be protected[.]" Grohn lists several reasons why the statute is overbroad, citing the United States Supreme Court arguing content-based restriction is unconstitutional unless it falls within the "few historic and traditional categories [of expression] long familiar to the bar." *See U.S. v. Alvarez*, 567 U.S. 709, 717 (2012) (citation omitted). He further attempts to distinguish *Scott*, by arguing that the application of *Scott* to section 42.07(a)(7) is incorrect because section 42.07(a)(4) only addresses telephone communication, as 42.07(a)(7) addresses broader "electronic communications" that "would ignore the vast differences in the communicative mediums."

First, we reject the argument that this is a content-based restriction. *See Ex parte Lo*, 424 S.W.3d at 24 n.64 (citing *Scott*, 322 S.W.3d at 670–71) (noting that *Scott* upheld the harassment statute as a "content-neutral restriction on speech" because it does not depend on *what* the communication is, only that repeated calls are made with intent to harass). Second, we disagree that *Scott* is inapplicable to the case, which is consistent with the position taken by several of our sister courts; while not binding precedent, we find our sister courts' reasoning persuasive. *Scott* reviewed a very similar statute and determined that although the statute did restrict

9

communicative conduct, this restriction did not implicate speech protected under the First Amendment because it was based on an intent of the actor to invade the "substantial privacy interests of another." 322 S.W.3d at 670. Per *Scott*, and several of our sister courts, this conduct is unprotected by the First Amendment. We agree. Almost identical to the communicative restrictions in 42.07(a)(4), and upheld as constitutional by *Scott*, the "communicative conduct" listed in section 42.07(a)(7) does not implicate the First Amendment. *See id.*; *see also* Tex. Penal Code Ann. § 42.07(a)(7). Section 47.02(a)(7) provides that the actor intend to "harass, annoy, alarm, abuse, torment, or embarrass another, the person [] sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another." Tex. Penal Code Ann. § 47.02(a)(7). According to *Scott*, this language shows that the actor must *intend* to "harass, annoy, alarm, abuse, torment, or embarrass another" with some form of communicative conduct "with the *intent* to inflict emotional distress[.]" 322 S.W.3d at 670 (emphasis added).

Second, Grohn's argument that the statue is overly broad because it includes the term "electronic communication," a broader form of communication than telephone communication, lacks merit. The *McDonald* court faced and rejected a similar argument. *See McDonald,* 606 S.W.3d at 861 (citing *Ex parte Ogle*, Nos. 03-18-00207-CR, 03-18-00208-CR, 2018 WL 3637385, at *6 (Tex. App.—Austin Aug.

10

1, 2018, pet. ref'd) (mem. op., not designated for publication)). *McDonald* explained that this argument was based on the dissent in *Scott* and not adopted by the majority. *Id*. at 862. Grohn's argument that a radical politically charged Facebook post could cause the communicator to be subject to 47.02(a)(7) prosecution because his friends could see this and be "harass[ed, annoy[ed], alarm[ed], abuse[d], torment[ed], embarrass[ed], or offend[ed]" as defined under the statute is incorrect. While the phrase "electronic communication" is broader than telephone commination, as explained previously, culpability under the statute depends on whether the person *intends* "to harass, annoy, alarm, abuse, torment, embarrass, or offend" another by repeated electronic communication in a manner that is "reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another." Tex. Penal Code Ann. § 42.07(a)(7); S*cott*, 322 S.W.3d at 670. This is not constitutionally protected speech, no matter the medium used.

As our sister Court in *Hinojos* explained "we do not invalidate a statute for overbreadth merely because it is possible to imagine some unconstitutional applications." *Hinojo*s, 2018 WL 6629678, at *6 (citing *State v. Holcombe*, 145 S.W.3d 246, 250 (Tex. App.—Fort Worth 2004), *aff'd*, 187 S.W.3d 496 (Tex. Crim. App. 2006)). "Rather, we must first determine if the statute reaches a *substantial* amount of constitutionally protected conduct." *Id.* (citing Scott, 322 S.W.3d at 665, n.2). "We analyze the statute for a 'realistic danger that the statute itself will

11

significantly compromise recognized First Amendment protections of parties not before the Court.'" *Id.* (quoting *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800–01 (1984)). Grohn's extreme examples fail to demonstrate that there is "realistic danger" to substantial amount of conduct protected by the First Amendment. *See id.*

Grohn relies extensively on a case from our sister court in Fort Worth to support his argument that section 42.07(a)(7) is facially unconstitutional.[2] *See Ex parte Barton*, 586 S.W.3d 573 (Tex. App.—Fort Worth 2019, pet. granted). Specifically, Grohn cites to the *Barton* opinion as authority that section 42.07(a)(7) is vague and overbroad, and therefore unconstitutional. We decline to follow *Barton*. The *Barton* case largely based its opinion on its analysis from a prior published opinion from that court. *See Barton,* 586 S.W.3d at 583–84 *(*citing *Karenev. v. State,* 258 S.W.3d 210 (Tex. App.—Fort Worth 2008), *rev'd*, 281 S.W.3d 428 (Tex. Crim. App. 2009)). *Barton* erred when it relied upon its prior holding in *Karenev*, as the Court of Criminal Appeals held that the appellant failed to preserve any constitutional challenge to the statute in the trial court and reversed the court of appeals opinion, thereby negating any precedential value of the intermediate appellate opinion. *See Karenev*, 281 S.W.3d at 484. *Barton* further relies upon the

---

[2] We note that the Court of Criminal Appeals has granted discretionary review of this case.

12

dissenting opinion in *Scott* for its reasoning, a position that has not been adopted by a majority of the Court of Criminal Appeals. *See Barton*, 586 S.W.3d at 578–79. As such, we agree with our sister court in *McDonald* that *Barton* is not binding on another intermediate court of appeals and are unpersuaded by *Barton* when the overwhelming majority of our sister courts that have examined this issue have held that section 42.07(a)(7) is constitutional. *See McDonald*, 606 S.W.3d at 863; *see also Mitchell*, 923 S.W.2d at 264.

Because we hold that section 42.07(a)(7) is not unconstitutionally overbroad, we sustain the State's first issue.

## B. Vagueness

In its second issue, the State argues that section 42.07(a)(7) is not vague. In response, Grohn asserts that section 42.07(a)(7) is unconstitutionally vague. Grohn states that section 42.07(a)(7) provides "subjective standards of the statute [and] set the communicator up for prosecution under a subjective standard, of which the communicator cannot reasonably deduce what specific conduct is being prohibited." As we have already stated, section 42.07(a)(7) does not implicate First Amendment protection and therefore, is not unconstitutionally vague. *Scott*, 322 S.W.3d at 670–71; *see also McDonald*, 606 S.W.3d at 863–64. Since section 42.07(a)(7) does not implicate the First Amendment's free speech guarantee, the burden falls on Grohn to demonstrate "that it was unduly vague as applied to his own conduct." *See Scott*,

13

322 S.W.3d at 670–71. Grohn only cites to *Barton* to support his argument the statute is unconstitutionally vague, and we have already explained why his reliance on that case is misplaced. Therefore, he failed to show how the statute is unconstitutionally vague as applied to his conduct. We sustain the State's second issue.

## IV. Conclusion

For the reasons explained above, we sustain the State's first two issues on appeal. Due to our resolution of these issues, it is unnecessary for us to address the State's remaining issues on appeal. *See* Tex. R. App. P. 47.1.

REVERSED AND REMANDED.

_____
CHARLES KREGER
Justice

Submitted on July 15, 2020
Opinion Delivered November 18, 2020
Publish

Before McKeithen, C.J., Kreger, and Johnson, JJ.